UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHAMBERS OF
STEPHANIE A. GALLAGHER
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-7780
Fax (410) 962-1812

June 21, 2013

LETTER TO COUNSEL:

      RE:    *Stephen Thomas Donaway v. Commissioner, Social Security Administration*
             Civil No. SAG-12-1848

Dear Counsel:

On June 22, 2012, the Plaintiff, Stephen Thomas Donaway,[1] petitioned this Court to review the Social Security Administration's final decision to deny his claims for Supplemental Security Income and Disability Insurance Benefits. (ECF No. 1). I have considered the parties' cross-motions for summary judgment, and Mr. Donaway's reply. (ECF Nos. 17, 18, 19). I find that no hearing is necessary. Local Rule 105.6 (D. Md. 2011). This Court must uphold the decision of the agency if it is supported by substantial evidence and if the agency employed proper legal standards. 42 U.S.C. §§ 405(g), 1383(c)(3); *see Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will deny both motions, vacate the Commissioner's denial of benefits, and remand this matter for further proceedings consistent with this opinion. This letter explains my rationale.

Mr. Donaway filed his claims on December 21, 2009, alleging disability beginning on January 1, 2009. (Tr. 106-14). His claim was denied initially on April 1, 2010, and on reconsideration on August 4, 2010. (Tr. 57-61, 64-67). A hearing was held by video on June 30, 2011, before an Administrative Law Judge ("ALJ"). (Tr. 30-52). Following the hearing, on July 26, 2011, the ALJ determined that Mr. Donaway was not disabled during the relevant time frame. (Tr. 13-29). The Appeals Council denied Mr. Donaway's request for review (Tr. 1-5), so the ALJ's decision constitutes the final, reviewable decision of the agency.

The ALJ found that Mr. Donaway suffered from the severe impairment of degenerative disc disease ("DDD"). (Tr. 18). Considering this severe impairment along with Mr. Donaway's other impairments, the ALJ determined that Mr. Donaway retained the residual functional capacity ("RFC") to:

    perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except; he must be able to sit for 30 minutes, stand for 30 minutes consistently on an

---

[1] Mr. Donaway's last name is spelled "Donoway" by his counsel. Because the spelling "Donaway" is used throughout the record in both SSA documentation and medical records, I will use that spelling in this opinion.

>alternate basis, 8 hours a day, 5 days a week. He can perform simple routine unskilled jobs SVP 1-2 in nature (1-2 step tasks) that involve low concentration, stress and memory with no or little decision-making or changes in the work setting and no production pace work. He must avoid temperature and humidity extremes, heights, hazardous machinery and stair climbing and like devices. Additionally, he can only climb, balance and stoop once or twice in an hour. Further, he is to avoid overhead reaching and the job must allow him to elevate his lower extremities on an infrequent basis.

(Tr. 19). After considering the testimony of a vocational expert, the ALJ determined that Mr. Donaway could perform jobs that exist in significant numbers in the national economy and that he was, therefore, not disabled during the relevant time frame. (Tr. 24-25).

Mr. Donaway presents three arguments on appeal: (1) that the ALJ erred in finding Mr. Donaway failed to comply with recommended treatment; (2) that Mr. Donaway's impairments satisfy the requirements of listing 1.04 for spine disorders; and (3) that the ALJ's adverse credibility finding and determination of the RFC were erroneous. Because each of Mr. Donaway's arguments is meritorious, remand is appropriate. In so holding, I express no opinion on whether the ALJ's ultimate determination that Mr. Donaway was ineligible for benefits was correct or incorrect.

First, Mr. Donaway submits that the ALJ erred in determining that he failed to comply with prescribed treatment because of gaps in treatment and his failure to undergo surgery as recommended. This Court has recognized that "[n]on-compliance with treatment may be justified when one has insufficient resources to obtain the medical treatment that may help them." *Neely v. Astrue*, No. 09-CV-523, 2010 WL 3895349, at *3 (D. Md. Sept. 30, 2010) (citing *Gordon v. Schweiker*, 725 F.2d 231, 237 (4th Cir. 1984)); *see also* 20 C.F.R. § 404.1530(b); SSR 82-59. Social Security Ruling 82-59 requires that the claimant be provided the opportunity to demonstrate that he has exhausted all free or subsidized sources of treatment and to document his financial resources in order to have his inability to pay considered good cause for failure to follow prescribed treatment. *Gordon*, 725 F.2d at 237.

For the most part, the treatment gaps identified by the ALJ are not supported by substantial evidence in the record. The ALJ notes gaps in Mr. Donaway's treatment from December 2009 to February 2010, (Tr. 20), from July 2010 to January 2011, *id.*, and from July 2009 to December 2010 (Tr. 22). With respect to the first alleged treatment gap, Mr. Donaway visited Dr. Galuardi on December 21, 2009, (Tr. 225-27), and on February 15, 2010, (Tr. 227-30). Dr. Galuardi noted on December 21 that Mr. Donaway was "having problems with his insurance . . . [and] will need to have a hearing." (Tr. 226). Dr. Galuardi also indicated in a later note that he would see Mr. Donaway in two months. (Tr. 306). That language and the interval between other visits tend to imply that Mr. Donaway's regular visits were scheduled for every other month. During the second alleged treatment gap between July 2010 and January 2011, Mr. Donaway saw Dr. Drapkin on October 6, 2010, (Tr. 300-02), and Mr. Donaway was in contact

with Dr. Galuardi's office on December 6, 2010 for a note and December 16, 2010 for prescription refills, (Tr. 303, 305). Accordingly, there is no evidence in the record of a treatment gap between December 2009 and February 2010 or July 2010 to January 2011.

The third alleged treatment gap noted by the ALJ (from July 2009 to December 2010) likely contains a typographical error since the same paragraph of the opinion mentions four of Mr. Donaway's treatment sessions with Dr. Galuardi during the specified time period. (Tr. 22). Even if the ALJ intended to identify a gap between July 2010 and December 2010, there is no substantial evidence in the record of such a gap in treatment. Dr. Galuardi noted that his office was treating Mr. Donaway on December 6, 2010, (Tr. 303), although he noted in a July 19, 2010 office visit summary that treatment was "in a holding pattern" awaiting authorization from an independent medical exam that had been performed by Dr. Saleman, (Tr. 307-09). Mr. Donaway received another independent medical exam by Dr. Drapkin on October 6, 2010. (Tr. 300-02).

The ALJ also faulted Mr. Donaway for failing to undergo the surgery recommended to him. The ALJ states that most of Mr. Donaway's doctors recommended surgery. (Tr. 25). It is important to note, however, that there was disagreement among those doctors about which surgery would be recommended. (Tr. 20, 262). There is, therefore, some question about whether a specific surgery was actually prescribed to Mr. Donaway. Assuming *arguendo* that Mr. Donaway's prescribed treatment included a specific surgery, the lack of authorization from his workers' compensation or other insurance plan may constitute good cause for his failure to follow such prescribed treatment. *See Neely*, 2010 WL 3895349, at * 3. Accordingly, one remand, the ALJ should allow Mr. Donaway the opportunity to show good cause for his failure to obtain treatment, i.e. the recommended surgery.

Mr. Donaway's second argument is that his impairments satisfy the criteria listing 1.04 of Appendix 1 for spine disorders. The ALJ does not provide adequately substantial evidence to sustain his conclusion that Mr. Donaway's impairments do not satisfy those criteria but merely states that Mr. Donaway "does not have an impairment or a combination of impairments that meets or equals any of the listed impairments (20 CFR 404.1526 and 416.926)" without any specific mention of listing 1.04. (Tr. 18-19). After the boilerplate language about analysis of a claimant's impairments, the ALJ states, "[h]owever, the representative did not contend that the claimant met or equaled a listing." (Tr. 19). The use of the word "however" is perplexing because it implies that a statement supporting Donaway's claim that his impairments satisfy listing 1.04 was meant to precede that sentence. Due to the inadequate reasoning in the ALJ opinion, this Court cannot ascertain whether the ALJ's finding is supported by substantial evidence and looks to evidence in the record indicating whether Mr. Donaway's impairments satisfy the listing.

Mr. Donaway has degenerative disc disease of the lumbar spine, which requires consideration of listing 1.04 of Appendix 1 for disorders of the spine. Mr. Donaway contends that his impairments satisfy listing 1.04A, which requires evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor

loss accompanied by sensory or reflex loss, and positive straight-leg raising test. Dr. Drapkin's report dated October 6, 2010, reflects marked tenderness in the lower lumbar region, reduced flexion, a positive straight leg raising test on the left in sitting and supine positions, and neurologically-related numbness and weakness in the left leg. (Tr. 301). Dr. Ducker's MRI report dated April 21, 2010, refers to very positive straight leg raising tests on both left and right, a very limited range of motion in Mr. Donaway's back into the sciatica, and decreased sensory perception on left, and an analgic gait due to pain. (Tr. 298). Dr. Drucker's accompanying notes indicate that Mr. Donaway's stenosis, or narrowing of the spinal canal, is causing nerve root pain and suggest that he needs further decompression of the cauda equine, or nerve roots. (Tr. 297). Accordingly, on remand, the ALJ should consider the aforementioned evidence in the analysis of the listing 1.04 criteria.

Mr. Donaway's third argument is that the ALJ improperly based his credibility determination on the RFC. The problem, however, lies in the credibility assessment which provided part of the underpinnings for the RFC. The Fourth Circuit has developed a two-part test for evaluating a claimant's subjective complaints. *Chater*, 76 F.3d at 594. First, there must be objective medical evidence of a medical impairment reasonably likely to cause the symptoms alleged by the claimant. *Id.* After the claimant meets this threshold obligation, the ALJ must evaluate "the intensity and persistence of the claimant's [symptoms], and the extent to which it affects [his] ability to work." *Id.* at 595. The ALJ followed that process in this case, but provided insufficient analysis to permit adequate review of his findings. (Tr. 22). The ALJ appears to have premised his adverse credibility finding on (1) lack of compliance with medical recommendations, which is problematic for the reasons set forth above; and (2) Mr. Donaway's activities of daily living ("ADLs"). (Tr. 21-22). The discussion of the ADLs does not contain sufficient detail to justify the conclusory statement that Mr. Donaway's subjective complaints "are not credible to the extent they are inconsistent with the above RFC assessment." (Tr. 22).

For the reasons set forth herein, the Plaintiff's motion for summary judgment (ECF No. 17) and the Commissioner's motion for summary judgment (ECF No. 18) will be DENIED, the decision of the ALJ will be VACATED, and the case will be REMANDED for further proceedings in accordance with this opinion. The Clerk is directed to CLOSE this case.

Despite the informal nature of this letter, it should be flagged as an opinion. An implementing Order follows.

                                                Sincerely yours,

                                                /s/

                                                Stephanie A. Gallagher
                                                United States Magistrate Judge